IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JOHN THOMAS,

                Petitioner,

against

THE PEOPLE OF THE STATE OF NEW YORK,

                Respondent.

CIVIL ACTION NO.: 17 Civ. 910 (LTS) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE,** United States Magistrate Judge:

**TO THE HONORABLE LAURA TAYLOR SWAIN**, United States District Judge:

### I.    INTRODUCTION

Pro se Petitioner John Thomas ("Thomas") filed a petition for writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254, following his July 27, 2011 conviction, after a guilty plea, in New York State Supreme Court, New York County, for Attempted Rape in the First Degree and Attempted Intimidating a Witness in the Third Degree. (See Pet. for Writ of Habeas Corpus ("Pet.") (ECF No. 1); Tr. of Plea Proceedings ("Plea Tr.") (ECF No. 16)). Consistent with a plea agreement between Thomas and the District Attorney's Office, the state court sentenced him to ten years in prison, to be followed by five years post-release supervision. (Plea Tr. at 8). Thomas filed his petition on Feb. 6, 2017 (Pet. at 1).

Thomas raises one claim in his Petition: that the sentencing court violated due process by failing to hold a hearing to determine the voluntariness of his guilty plea. (Pet. at 3). Respondent opposes on the ground that Thomas was fully competent and aware at the time of

his plea, and that the Appellate Division correctly applied Supreme Court precedent in affirming the sentencing court's decision.

For the reasons set forth below, I respectfully recommend that the Petition be dismissed in its entirety.

## II.    BACKGROUND

### A.    Factual Background

According to the transcript of Thomas's plea hearing, on June 3, 2010, Thomas accompanied a woman to his friend's apartment at 48 Mercer Street in Manhattan.  (Plea Tr. at 8:25–9:15 (ECF No. 16)).  When the woman tried to leave, Thomas broke her cell phone, choked her, and forced her to have sexual intercourse with him.  (Id.).  He was arrested later that day.  (Id.).  On June 7, 2010, Thomas threatened a witness in the case.  (Id. at 9:22–10:3).

### B.    Procedural History

#### 1.    Plea proceedings

On July 27, 2011, pursuant to a plea agreement, before Justice Larry Stephen, Thomas pleaded guilty to Attempted Rape in the First Degree and Attempted Intimidating a Witness in the Third Degree, with an agreed-on sentence of ten years imprisonment followed by five years of post-release supervision.[1]  (Plea Tr. at 8).  During the proceedings, Thomas was represented by counsel, James McQueeney, Esq., of the Legal Aid Society.  (Id. at 1).  Before accepting the

---

[1] At the start of the plea proceedings, defense counsel informed Justice Stephen that there had been a disposition, and that Thomas had authorized him to withdraw his prior plea of not guilty and enter a plea of guilty to one count of Attempted Rape in the First Degree and to one count of Attempted Intimidation of a Witness in the Third Degree.  (State Ct. R. ("R.") at 70 (ECF No. 15)).

2

plea, Justice Stephen asked Thomas several questions to ensure that his plea was knowing and voluntary. The relevant portion of the plea allocution was as follows:

> THE COURT: Mr. Thomas, I'm going to be asking you some questions. If there is anything that you do not understand please speak with your lawyer, Mr. McQueeney, who is seated next to you. Also, all of your responses must be verbal responses; yes or no, because the Court Reporter has to take down everything I say and everything you say. Do you understand that?
>
> THE DEFENDANT: Yes sir.
>
> THE COURT: All right, Mr. Thomas, is it your wish now to withdraw your plea of not guilty and plead guilty to attempted rape in the First Degree . . . and the attempted intimidating the witness in the third degree, that's a Class A Misdemeanor in full satisfaction of your case before the Court; yes or no? You have to answer.
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you plead guilty voluntarily?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Has anybody forced you or coerced you into pleading guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Have you had a full and complete opportunity to discuss your case with your lawyer?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you need any additional time to speak with your lawyer? You have to say yes or no. Do you need additional time to speak with you lawyer?
>
> THE DEFENDANT: Is that going to affect my –
>
> THE COURT: No. I just want to know that you have fully discussed this case with your lawyer, that you understand what you're doing, and if you need more time to speak with Mr. McQueeney we can stop now, and you can go in the back or you can speak –
>
> THE DEFENDANT: I would like to speak to him further.

(Plea Tr. at 3:17–5:7). Justice Stephen then recessed the plea proceeding for several minutes to allow Thomas to speak with his counsel privately. (Id.). The allocution continued:

> THE COURT: Mr. Thomas, are you ready to proceed?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you have enough time to speak with Mr. McQueeney? I got to have an answer verbally.
>
> THE DEFENDANT: Excuse me?
>
> THE COURT: I assume you don't need any additional time?
>
> THE DEFENDANT: No.
>
> . . .
>
> THE COURT: Are you, today, under the influence of any drugs or medication?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you understand, clearly, what is happening here today?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand that when you do plead guilty you give up certain important trial rights. You give up your right to be tried by a jury of 12 citizens who would have to decide whether the prosecutor has proven your guilty beyond a reasonable doubt? You understand you give up that right? . . .
>
> THE DEFENDANT: Yes, I understand. I'm just thinking while you're speaking.
>
> THE COURT: Take your time, no rush. You also understand that you give up your right to have your lawyer cross examining, questioning witnesses who the People would have to call at that trial to prove your guilt? You give up that right?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You also give up the right to present evidence at that trial, including any defenses you may have to the charges, and you're giving up

4

your Fifth Amendment right to remain silent.  You understand by pleading guilty you give up all of those trial rights?

THE DEFENDANT: Yes.

THE COURT: Knowing that you're giving up all of your trial rights do you still wish to plead guilty? Mr. Thomas, do you need another break?

THE DEFENDANT: No – I mean it's just a lot for me, man. You know what I'm saying?

THE COURT: You understand you're pleading to very serious charges? If you're not ready to do it we don't have to do it.
. . .
THE DEFENDANT: So I'm getting sentenced to ten years like you said?

THE COURT: Do you understand – with the understanding I had from the prosecutor that your sentence would be ten years prison and then five years post release supervision, is that your understanding?

THE DEFENDANT:  Yes.

THE COURT: Do you want to proceed with the plea or would you rather go to trial?

THE DEFENDANT: Proceed with the plea.

THE COURT: Knowing that you've given up all of your trial rights do you still wish to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Do you understand that as a part of this plea agreement with the prosecutor you also waive [your] right to appeal this case? You understand that?

THE DEFENDANT: Yes.

THE COURT: You understand that this plea will give you another felony conviction and that in the future if you do commit another felony you would be subjected to enhanced mandatory state prison time? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: It's charged in the complaint that on or about June 3rd, 2010 at about 1:30 a.m. in the morning at [48] Mercer Street here in New York County, it's alleged in the complaint that you had forced – you had intercourse with the complaining witness by forcible compulsion in that you choked the complaining witness and had intercourse with her without her consent. And during the course of that caused her physical injury. Are those charges true? Do you understand the facts that I stated?

THE DEFENDANT: I understand them, your Honor.

THE COURT:  Did you or did you not have forcible sex with the complaining witness on June 3rd, 2010 inside an apartment at 48 Mercer Street here in New York County; yes or no?

THE DEFENDANT: Yes.

THE COURT: I'm going to ask you again, Mr. Thomas, are you pleading guilty voluntarily[?]

THE DEFENDANT: Yes.

THE COURT: Is anybody forcing you to plead guilty?

THE DEFENDANT: No.

THE COURT: As for count five of the indictment, it's charged that on or about June 7th, 2010 that you threatened a witness in this case, and that's the intimidating witness count. Are those charges true as it relates to that charge? . . .

THE DEFENDANT: Yes.

THE COURT: Is the plea acceptable to the People?

MS. GRETINA: Yes, your Honor.

THE COURT:  All right, Mr. Thomas before the clerk enters the plea I'm going to ask you, again, because you seemed a little reluctant to wanting to go forward with this plea, and I just need an answer; yes or no.

THE DEFENDANT: Yes.

THE COURT: You do want to go forward with the plea?

THE DEFENDANT: Yes.

THE COURT: We can enter the plea on behalf of the defendant.

(Id. at 5:17–10:17). Thereafter, Thomas formally entered his guilty plea and Justice Stephen set a sentencing date of September 8, 2011, granting him additional time due to a family illness and his observance of Ramadan. (Id. at 12:9–13:7).

### 2. Sentencing proceedings

Consistent with the plea agreement, Thomas was to be sentenced to ten years in prison followed by five years of post-release supervision. When he appeared on September 21, 2011, however, Thomas informed Justice Ronald Zweibel (the presiding Justice) that he "wanted to see if it was possible [to take his] plea back because [he] didn't understand the plea[.]" (Tr. of Sentencing Proceedings ("Sent. Tr."), 2:15–18 (ECF No. 16)). Thomas stated that he did not understand the plea because he was not taking his psychiatric medication at the time of the plea allocution. (Id. at 3).

Justice Zweibel then held a bench conference with Thomas' counsel and the assistant District Attorney, and reviewed the plea allocation transcript. (Id. at 3:18–20; 5:7). He concluded that Thomas was "given ample opportunity" to decide whether to plead guilty and stated that the court was "satisfied that [his] plea was a valid plea." (Id. at 3:22–25). Thomas stated that he would not have taken the plea had he been on his medication, but, after a second off-the-record conference (id. at 5:1–5), the court denied the motion and stated that Thomas "clearly understood what was happening" at the plea allocution. (Id. at 5:7–8). Justice Zweibel then sentenced Thomas. (Id. at 5:13–14).

### 3. Direct appeal

In November 2014, Thomas appealed his conviction to the New York Supreme Court, Appellate Division, First Department (the "Appellate Division"). (R. at 65). On appeal, Thomas

argued that the sentencing court improperly denied him a hearing on the voluntariness of his guilty plea. (R. at 81). He argued that because he was not taking his regular psychiatric medication, he was unable to understand the nature of his plea, and the sentencing court should have granted him a hearing as to whether his guilty plea was truly voluntary. (Id.).

On October 6, 2015, the Appellate Division unanimously affirmed the sentencing court's decision and concluded that "the court properly exercised its discretion in denying defendant's plea withdrawal motion." (R. at 125). The Appellate Division explained that, "[d]uring the plea allocution, defendant, who had pleaded guilty on prior occasions, was rational and coherent, and assured the court that he understood the meaning of his plea and was pleading guilty of his own free will." (Id. at 125–26). The court concluded that the record established that the plea was voluntary and not the product of Thomas's lack of medication. (Id. at 126).

The New York Court of Appeals denied Thomas' request for leave to appeal. (Id. at 131).

### C. Federal Habeas Corpus Petition

Thomas, without the assistance of counsel, commenced this action for relief pursuant to 28 U.S.C. § 2254, by filing the Petition dated February 1, 2017. (Pet. at 1). As noted above, he raises one claim, that he was improperly denied a hearing on the voluntary nature of his plea, in violation of his due process rights. (Id.).

On June 20, 2017, Respondent opposed the Petition by filing a Response (ECF No. 13) and Memorandum of Law in Opposition to the Petition (ECF No. 14), together with the state court record (ECF No. 15) and the transcripts of the trial court proceedings. (ECF No. 16). Thomas did not file a reply, and the time to do so has passed.

### III. DISCUSSION

#### A. Applicable Legal Standards

##### 1. Exhaustion

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not consider a petition for a writ of habeas corpus by a prisoner in state custody unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); see Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014). To satisfy the exhaustion requirement, the petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the opportunity to correct the alleged violations of federal rights. Picard, 404 U.S. at 275. The exhaustion requirement is fulfilled once the federal claims have been presented to "the highest court of the state." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted).

Here, Thomas raised his claim on direct appeal to the Appellate Division (R. at 65), and in his letter seeking leave to appeal to the Court of Appeals. (Id. at 127). He has therefore exhausted his claim for the purposes of federal court review. See Galdamez, 394 F.3d at 74 ("one complete round" of New York's appellate review process involves appeal to Appellate Division and then application to Court of Appeals for certificate granting leave to appeal).

##### 2. Standard of review

If the state court has reached the merits of a claim, this Court must apply a "highly deferential" standard in reviewing that claim in a habeas corpus proceeding. 28 U.S.C. § 2254(d); Renico v. Lett, 559 U.S. 766, 773 (2010); Williams v. Taylor, 529 U.S. 362, 413 (2000). A claim has been "adjudicated on the merits" when the state court ruled on the substance of the claim itself, rather than on a procedural or other ground. See Bell v. Miller, 500 F.3d 149, 154-55 (2d Cir.

9

2007); Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (nothing that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced").

Here, the Appellate Division adjudicated Thomas's motion to withdraw his plea on its merits. People v. Thomas, 132 A.D.2d 423 (1st Dep't 2015) (R. at 125–26). Therefore, this Court must adhere to the standard of review set forth in Section 2254(d), which provides, in relevant part, that a court may grant a writ of habeas corpus on a claim that has been previously adjudicated on the merits by a state court only if the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established federal law where the state court either applies a rule that contradicts Supreme Court precedent or confronts a case with materially similar facts to a Supreme Court case and arrives at a different result. See Rosario v. Ercole, 601 F. 3d 118, 123 (2d Cir. 2010) (quoting Williams, 529 U.S. at 412–13). An "unreasonable application" of clearly established federal law occurs when the state court identifies and applies the correct governing legal principle, but its application was "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 73–76 (2003) (citing Williams, 529 U.S. at 409). Under section 2254(d)(2), the Court must consider the reasonableness of the decision in light of

the evidence presented at the proceeding under review. See Cardoza v. Rock, 731 F.3d 169, 182 (2d Cir. 2013). Even if the standard under Section 2254(d)(2) is met, the petitioner "still bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Id. (internal quotation and citation omitted). The question under the AEDPA "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable, which is a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

### 3. Habeas corpus review of guilty pleas

Due process dictates that a guilty plea must be voluntary, knowing, and intelligent. See, e.g., Bousley v. United States, 523 U.S. 614, 618 (1998); Mabry v. Johnson, 467 U.S. 504, 508 (1984); Brady v. United States, 397 U.S. 742, 748 (1970). The voluntariness of a guilty plea is reviewed by examining the totality of the circumstances, Brady, 397 U.S. at 749, and absent clear and convincing evidence, "[a] state court's determination of the voluntariness of a defendant's guilty plea is a factual issue that is entitled to a presumption of correctness on habeas review." Murray v. McGinnis, No. 00 Civ. 3510 (RWS), 2001 WL 26213, at *4 (S.D.N.Y. Jan. 10, 2001); see Rodriguez v. Bradt, No. 09 Civ. 10285 (LTS)(DF), 2011 WL 6747470, at *7 (S.D.N.Y. Sept. 14, 2011) ("a state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence") (internal citations omitted); 28 U.S.C. § 2254(e)(1) (petitioner has burden of "rebutting the presumption of correctness by clear and convincing evidence"). Once a guilty plea is accepted by a court of first instance, there is no "absolute right" to withdraw it, and "whether to hold a hearing on the motion to withdraw is within the sound discretion of the trial court." Id.; see also Thomas v. Senkowski, 968 F. Supp. 953, 956 (S.D.N.Y.

1997) (holding that fact-finding procedures requisite to the determination of a motion rest largely in the discretion of the judge to whom the motion is made).

### B. Analysis of Thomas' Claim

In the Petition, Thomas claims that the sentencing court improperly denied him a hearing on the voluntariness of his guilty plea. (Pet. at 3.) He argues that he did not understand the plea because he had stopped taking prescribed medication, and should have been allowed a hearing on his motion to withdraw the plea as involuntary. (Id.)

This Court presumes, as it must, that Thomas's plea was voluntary, and defers to the sentencing court's determination. Murray, 2001 WL 2621326213, at *4. His admission of guilt at the plea allocution "constitute[s] a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."). Faced with this presumption, Thomas was then required to submit "credible reasons" to reject his plea statements. United States v. Arias, 166 F.3d 1201, 1201 (2d Cir. 1998) (summary order).

In support of the claim in his Petition, however, Thomas points only to his statements at sentencing that he "didn't understand the plea" because he was not taking his medication. (Pet. at 3; Sent. Tr. at 2:17–18). These conclusory statements are insufficient to overcome the presumption that his plea was knowing, intelligent and voluntary. Arias, 166 F.3d at 1201; Torres, 129 F.3d at 715; see also United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2011) (rejecting an ineffective assistance of counsel claim based only on the defendant's factual assertions that contradicted his sworn statements at the plea allocution). At the plea allocution, Justice Stephen

12

asked Thomas on at least seven separate occasions if he understood the proceedings and the consequences of the plea, and each time Thomas stated that he did.[2]  In addition, because Thomas seemed hesitant, Justice Stephen undertook additional inquiries several times during the proceeding to confirm that Thomas did in fact want to enter a guilty plea, and that his plea was voluntary and uncoerced.[3]  Justice Stephen also gave Thomas opportunities to back out of his plea if he was not ready at that time, but Thomas still affirmatively chose to proceed to enter the guilty plea.  (Id. at 5:11–14, 6:20, 7:12–14 ("You understand you're pleading to very serious charges? If you're not ready to do it we don't have to do it.")).

Thomas has not presented any evidence as to why this Court should ignore his own statements that he understood the nature and consequences of his plea.  While the record does reflect some hesitation by Thomas,[4] a plea entered into with hesitation does not make it

---

[2] Plea Tr. at 6:8–10 ("Do you understand, clearly, what is happening here today?" "Yes."), 6:11–18 ("You understand that when you do plead guilty you give up certain important trial rights. . . You understand you give up that right?" "Yes, I understand."), 6:21–25 ("You also understand that you give up your right to have your lawyer cross examining, questioning witness who the People would have to call at that trial to prove your guilty? You give up that right?" "Yes."), 7:1–6 ("You also give up the right to present evidence at that trial, including any defenses you may have to the charges, and you're giving up your Fifth Amendment right to remain silent.  You understand by pleading guilty you give up all of those trial rights?" "Yes."), 8:4–8 ("your sentence would be ten years prison and then five years post release supervision, is that your understanding?" "Yes."), 8:15–18 ("Do you understand that as part of this plea agreement with the prosecutor you also waive your right to appeal this case? You understand that?" "Yes."), 8:19–24 ("You understand that this plea will dive you another felony conviction and that I the future if you do commit another felony you would be subjected to enhanced mandatory state prison time? Do you understand that?" "Yes, sir.") (emphasis added).

[3] Id. at 4:1–11 ("is it your wish now to . . . plea guilty . . .?" "Yes."), 4:12–13 ("Do you plea guilty voluntarily?" "Yes."), 4:14-— ("Has anybody forced you or coerced you into pleading guilty?" "No."), 8:9–11 ("Do you want to proceed with the plea or would you rather go to trial?" "Proceed with the plea."), 8:12–14 ("Knowing that you've given up all of your trial rights do you still wish to plead guilty?" "Yes."), 9:16–18 ("I'm going to ask you again, Mr. Thomas, are you pleading . . . guilty voluntarily?" "Yes."), 10:7–12 ("All right, Mr. Thomas before the clerk enters the plea I'm going to ask you, again, because you seemed a little reluctant to wanting to go forward with this plea . . ." "Yes."), 10:13–15 ("You do want to go forward with the plea?" "Yes.") (emphasis added).

[4] In his brief before the Appellate Division, Thomas pointed to the following statements that indicate his hesitation and allegedly evidence his lack of understanding of the plea hearing.  (R. at 81–19).  Early in the proceeding Thomas requested a break to speak to his counsel, after the court reassured him that a break would not affect the proceedings. (Sent. Tr. at 4:20–5:16).  In one instance, Thomas had to be reminded to answer the Justice verbally, to which we replied, "Yes, I understand. I'm just thinking while you're speaking. (Id. at 6:18–19).  Finally, at

involuntary when the totality of the circumstances indicate that the plea was voluntary. Brady, 397 U.S. at 749.

Furthermore, "[b]oth federal and state precedent have established that a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea." Hines v. Miller, 318 F.3d 157, 162 (2d Cir. 2003) (collecting cases); see also Martinez v. Costello, No. 03 Civ. 02763 (GEG), 2004 WL 26306, at *7 (S.D.N.Y. Jan. 5, 2004) (in the absence of a federal constitutional right to an evidentiary hearing, state court denial of a hearing was not contrary to, or an unreasonable application of, clearly established federal law). Before Justice Zweibel at sentencing, Thomas had a "reasonable opportunity" to present his arguments as to why he should have been allowed to withdraw his guilty plea. Thomas, 968 F. Supp. at 956. After Thomas's counsel made an oral motion to withdraw his guilty plea, Justice Zweibel allowed him to explain its grounds. (Sent. Tr. at 2:15–3:7). Justice Zweibel then reviewed the plea allocution transcript and held a bench conference with both counsel. (Id. at 5:18–20). Only after further colloquy on the record and a second bench conference did Justice Zweibel deny the motion to withdraw the guilty plea. (Id. at 5:4–5). In these circumstances, Thomas has not demonstrated that this was a "rare instance" where a separate hearing was required to satisfy due process. Thomas, 968 F. Supp. at 956. Therefore, he has not demonstrated that the Appellate Division's decision rejecting his due process claim was contrary to clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d)(1)(2).

---

another point during the proceeding the Justice asked Thomas if he needed another break, to which he replied, "No – I mean it's just a lot for me, man. You know what I'm saying?" (Id. at 7:7–7:11).

Finally, the totality of the circumstances indicate that that Thomas's plea was knowing and voluntary.  Brady, 397 U.S. at 749.  First, Thomas was represented by "competent counsel," with whom Justice Stephen gave him ample opportunity to confer.  See Mabry, 467 U.S. at 408; Brady, 397 U.S. at 756.  The plea transcript does not contain any indication that Thomas was incapacitated or otherwise unable to understand the proceedings.  Second, Thomas has pleaded guilty on several occasions (R. at 125), which suggests that he understood the significance and consequences of the plea process generally.  Third, Mr. Thomas told Justice Stephen that he was not "under the influence of any drugs or medication." (Plea Tr. at 6:5–6).  If he was experiencing impediments from ceasing his medication, Thomas could have notified the court at that time, but instead he repeated that he was not impaired and understood the proceedings.  (Id. at 6:8–10).  Each of these factors further supports the conclusion that Mr. Thomas understood the proceedings and was voluntarily entering a guilty plea.  Brady, 397 U.S. at 749.

In the absence of "clear and convincing" evidence necessary to overcome the presumption that the sentencing court's determination of the voluntariness of Mr. Thomas's plea, the state court's rulings are not unreasonable.  See Murray, 2001 WL 26213, at *4.

### IV.     CONCLUSION

For all of the foregoing reasons, I recommend that the Petition be dismissed in its entirety.

I further recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), as Thomas has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to the address below.

Dated:       New York, New York
             October 23, 2019

_____
SARAH L. CAVE
United States Magistrate Judge

Mail to:     John Thomas
             11-A-4408
             Mid-State Correctional Facility
             P.O. Box 2500
             Marcy, NY 13403

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Swain.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).  If Thomas does not have access to

cases cited in this Report and Recommendation that are reported on Westlaw, he may request copies from Respondent's counsel.  <u>See</u> Local Civ. R. 7.2.